# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
# Judge Daniel D. Domenico

Case No. 1:19-cv-01447-DDD-SKC

STEVEN P. MARES, JR.,
MARES & ARMSTRONG, LLC, and
MARES IMMIGRATION BONDS, LLC,

    Plaintiffs,

v.

COLORADO DIVISION OF INSURANCE,
MICHAEL CONWAY, as Commissioner of Insurance,
BETH HAM, and
VONSHAY D. MCCARTHER,

    Defendants.

## ORDER OF DISMISSAL

    Plaintiffs, two bail bond companies and their principle, bring this action against the Colorado Division of Insurance, its Commissioner, and an investigator—who they assert violated the United States Constitution by failing to promptly investigate them or process their application for a license to produce insurance in Colorado. Plaintiffs further assert state law tort claims against an ex-employee-turned competitor who complained of their conduct to the Division. Before the Court are motions to dismiss for lack of subject matter jurisdiction and for failure to state claims upon which relief may be granted. (Docs. 23, 26.[1])

---

[1]     Doc. 24 was amended and re-filed as Doc. 26 to correct an error with the certificate of service.

At this stage, the Court must take all well-pleaded allegations as true and construe them in the light most favorable to the plaintiffs. Doing so here, the Amended Complaint paints a picture of a bureaucratic system that creates burdensome and potentially arbitrary barriers more useful for competitors seeking to disadvantage one another than for the protection of potential consumers. The question now before the Court though is not whether such treatment is appropriate or even whether it violates Plaintiffs' rights. The question is whether Plaintiffs' efforts to vindicate those rights are properly in federal court at this time. For the reasons explained below, the Court concludes they are not, so the motions are **GRANTED**.

## ALLEGATIONS AND BACKGROUND

### A. Colorado Administrative Procedure Act and Insurance Licensing Regulations

This case involves several procedural rules and regulations governing licensure to produce insurance in Colorado. The Court begins with a brief overview of the state provisions cited in the pleadings.

Rulemaking and licensing procedures by Colorado agencies are governed by the Colorado Administrative Procedure Act ("CAPA"). Colo. Rev. Stat. § 24-4-101. Relevant here, every insurance producer in Colorado must be duly licensed. Colo. Rev. Stat. § 10-2-401(1). Applicants for licenses, be they individuals or business entities, must be verified as "competent, trustworthy, and of good moral character and good business reputation." Colo. Rev. Stat. § 10-2-404(1)(h) and (2)(b). "An application for a license shall be acted upon promptly," and "[e]very agency decision respecting . . . denial . . . of a license shall be based solely upon the stated criteria, terms, and purposes of the statute [governing insurance pro-

ducers], or regulations promulgated thereunder, and case law interpreting such statutes and regulations." Colo. Rev. Stat. § 24-4-104(1), (2), and (8).

The Colorado Insurance Commissioner may refuse to issue or renew a license if he or she finds any violations by a licensee or applicant—including making misrepresentations on an application, engaging in prohibited bail bond transaction activities, misappropriating property, being convicted of a felony, or engaging in other fraudulent, coercive, or dishonest practices. Colo. Rev. Stat. §§ 10-2-801(1), 18-13-130. No license revocation or denial is lawful unless the agency gives the applicant written notice of objective facts or conduct, established upon a full investigation, that may warrant such action. Colo. Rev. Stat. § 24-4-104(3)(a). If an application for a new license is denied without a hearing, the applicant, within sixty days after the giving of notice of such action, may request a hearing before the agency, and the action of the agency after any hearing is subject to judicial review. Colo. Rev. Stat. § 24-4-104(9); *see also id.* §§ 24-4-105, 24-4-106 (outlining hearing and appeal procedures).

**B. Allegations**

The following allegations are taken from the Plaintiffs' Amended Complaint (Doc. 20) and are treated as true for purposes of assessing the motions to dismiss. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

Plaintiff Steven Patrick Mares, Jr. is a resident of Colorado and the owner of Plaintiffs Mares & Armstrong, LLC ("M&A") and Mares Immigration Bonds, LLC ("MIB"). M&A is one of the largest bail bond companies in Colorado and has been in the industry for more than

twenty years. Mr. Mares and M&A are licensed resident insurance producers in Colorado and authorized to write bonds, which are backed by the country's largest bail bonds insurer, Bankers Insurance Company ("Bankers"). M&A's posting agents are employees, rather than independent contractors, and are themselves licensed by the Division to produce insurance.

For efficiency purposes, M&A obtains its employees' authorization to use their stamped signatures on documents required by the courts after original bonds are posted. These documents, "consents of surety," are necessary to continue bonds and are often needed in a time-sensitive manner. M&A handles requests for consents in its central office, and—pursuant to its authorization from the employee who posted the original bond—stamps employees' signatures on them before filing them with the relevant courts. Consumers are thus able to avoid jail if certain posting agents are unavailable or not working that day. Plaintiffs allege that this practice is legal, and that many current and former employees authorized it.

Defendant Colorado Division of Insurance ("Division") is a branch of the Department of Regulatory Authorities and is responsible for regulating the insurance industry in the state. Colo. Rev. Stat. § 10-1-103. Defendant Michael Conway, the Insurance Commissioner, is the chief executive of the Division, *see* Colo. Rev. Stat. § 10-1-104(1), and is sued only in his official capacity. Defendant Beth Ham is a senior investigator with the Division and is sued only in her individual capacity.

Defendant Vonshay D. McCarther, a former employee of M&A, had also authorized M&A to use his stamped signature on consents. But on January 10, 2018, days before starting a competing bail bond business, he filed a complaint with the Division accusing M&A of using his

signature without authorization. He used the complaint to undermine, and interfere with the business of, his former employer (and new competitor).

Because of Mr. McCarther's accusation, the Division investigated M&A. Ms. Ham, who was responsible for the investigation, sent four inquiries each to Bankers and M&A over the next year.[2] To each request, the companies "responded timely with complete and accurate information." Despite M&A's responsiveness to these inquiries, Plaintiffs allege that the investigation was "secret," they never had the opportunity to "meet with the Division and hear or respond to any concerns," and the "Division [ ] refused to provide any complaint to" M&A or Mr. Mares. This investigation lasted approximately fifteen months.

Meanwhile, on June 20, 2018, Mr. Mares filed an application for a license to produce insurance on behalf of MIB. Ms. Ham responded on October 2 with requests for information about MIB's personnel. She then sent three inquires to Bankers concerning MIB's application, to which Bankers promptly responded. The Division did not request any further information from MIB, Mr. Mares, or Bankers after November 2, 2018. It did not respond to Mr. Mares's multiple subsequent inquiries, except to say on November 21, 2018 and March 28, 2019 that the application was "in process" and under review. The Division did not act on the application for nearly a year.

On May 22, 2019, Plaintiffs filed this action to recover for the governmental Defendants' alleged "unreasonable and arbitrary delays in

---

[2] On February 12, May 16, and August 24, 2018, and January 25, 2019, the Division requested information from Bankers. On July 11, October 4, and December 20, 2018, and February 5, 2019, it requested information from M&A.

[their] investigations of existing licenses and pending applications for new licenses" and Mr. McCarther's alleged attempt to "intentionally harm a competitor in the bail bond business." On June 14, the Division filed a notice of grounds for denial of MIB's application with the state office of administrative courts.[3] The same document contains a notice of charges against Mr. Mares, M&A, MIB, and another of Mr. Mares's entities. It alleges ninety-five counts of fraud, forgery, dishonest and coercive practices, incompetence, lack of trustworthiness and good moral character. The charges seek to affirm the denial of MIB's application, revoke Mr. Mares's license, revoke M&A's license, and more than $195,000 in civil penalties. Plaintiffs represent that a hearing on these matters will take place on May 17, 2020. (*See* Doc. 38, at n.1.)

The timeline of events is as follows:

| | |
|---|---|
| January 2018: | Mr. McCarthur files a complaint against M&A and Mr. Mares with the Division. |
| February 2018: | The Division begins investigating M&A and Mr. Mares. |
| July 2018: | Mr. Mares files an application on behalf of MIB. |
| November 2018: | The Division sends final requests for information concerning MIB. |

---

[3] *See generally* Doc. 23-1. While courts must usually refrain from examining material extrinsic to the pleading on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), they may consider outside documents when considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See infra.* This document is the only material outside the Amended Complaint currently being considered by the Court.

| | |
|---|---|
| February 2019: | The Division sends final requests for information concerning M&A and Mr. Mares. |
| May 2019: | Plaintiffs file this lawsuit. |
| June 2019: | The Division files notice of grounds for denial of MIB's application and charges against Mr. Mares, MIB, and M&A. |

On July 9, Plaintiffs filed the Amended Complaint. In it, Plaintiffs allege six constitutional and state law tort claims: (1) damages for violations of procedural and substantive due process protections under the Fourteenth Amendment against Ms. Ham; (2) damages for equal protection violations against Ms. Ham; (3) declaratory relief that the Division, Mr. Conway, and Ms. Ham violated all Plaintiffs' rights to due process and equal protection under the Fourteenth Amendment; (4) injunctive relief to prevent the Division and Mr. Conway from infringing upon the constitutional rights of licensees and applicants; (5) damages for abuse of process against Mr. McCarther; and (6) damages for tortious interference with business relations against Mr. McCarther. Before the Court are motions to dismiss the first four of these counts for lack of subject matter jurisdiction and for failure to state claims upon which relief may be granted.[4] *See* Fed. R. Civ. P. 12(b)(1) and (6).

## ANALYSIS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Federal subject matter jurisdiction is elemental . . . and its presence must be established in every cause under

---

[4] Despite having been served with the Amended Complaint, Mr. McCarther has not timely responded to it, either by motion to dismiss or answer. (*See* Docs. 25, 27.)

review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012). "It is to be presumed that a cause lies outside this limited [federal] jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. A facial attack questions the sufficiency of the complaint, and a district court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). But when reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to consider affidavits and other documents. *Id.* at 1003.

Defendants have argued that, even if jurisdiction exists, Plaintiffs have failed to state viable claims. To survive a motion to dismiss under Rule 12(b)(6), "detailed factual allegations" are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the Rule calls for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss

for failure to state a claim under Rule 12(b)(6). *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167–68 (10th Cir. 2012). As the Supreme Court has explained:

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law[,] and just as issues of fact[,] it must be decided after[,] and not before[,] the court has assumed jurisdiction over the controversy.

*Bell v. Hood*, 327 U.S. 678, 682 (1946). The Court will, therefore, first consider whether it has the power to hear Plaintiffs' claims before turning to whether Plaintiffs plausibly allege them.

### A. Claims Against the Division and Director Conway

Plaintiffs assert two claims for equitable relief against the Division and Director Conway. First, they seek a declaration that these Defendants violated their rights to due process and equal protection by spending nearly one year reviewing MIB's license application without acting on it, and fifteen months investigating Mr. Mares's and M&A's licenses. Plaintiffs also request that Defendants be generally enjoined from violating due process rights through unreasonable and arbitrary delays in investigations of existing licenses and pending applications for new licenses. Plaintiffs also seek to enjoin Defendants from violating constitutional equal protection by classifying or treating insurance producers issuing bail bonds differently than other similarly situated insurance producers.

Defendants raise several arguments that implicate the Court's subject matter jurisdiction. They argue that the Division is immune from suit under the Eleventh Amendment. They further submit that Plaintiffs claims are moot and unripe, that Plaintiffs lack standing; and that the Court must abstain from hearing the matter because it is a going concern before the state administrative courts. There is merit to these arguments, but the Court focuses on the timing of these claims. To the extent they seek retrospective relief, they are moot, and all claims seeking prospective relief are unripe.

It's clear that Plaintiffs brought this action amid frustration with the limbo in which the Division's lengthy process had placed them. For many months, they sat without knowing the fate of MIB's application or Mr. Mares's and M&A's licenses. The focus of these claims was thus on prodding the Division to end the delays and resolve the process. Plaintiffs were careful not to ask this Court to order the Defendants to grant their applications or otherwise determine the outcome. They just sought to require the Division to take action.

But since the case was filed, as Plaintiffs acknowledge in their Amended Complaint, the Division *has* acted by denying MIB's application and initiating proceedings to have Mr. Mares's and M&A's licenses revoked—the merits of which will be considered in a forthcoming administrative hearing. Since they have now done what the case was meant to require, it should come as little surprise that there is little left that the Court can resolve.

Two "related doctrines, standing and mootness, keep federal courts within their constitutional bounds." *Brown v. Buhman*, 822 F.3d 1151, 1163–64 (10th Cir. 2016). Standing concerns whether a plaintiff's

action qualifies as a case or controversy when it is filed; mootness ensures it remains one at the time a court renders its decision. *Id.* The Supreme Court has described mootness "as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Failure to satisfy the requirements of either doctrine places a dispute outside the reach of the federal courts, *id.*, which extends only to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A case is rendered moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000).

Plaintiffs' request for declaratory relief asks the Court to declare that the Defendants' conduct violates the U.S. Constitution. At the time this claim was asserted, it was about ongoing delays and the failure to act. Now that the Division has acted, the claim is solely about the legality of past, complete conduct. Even were there some justiciable controversy when Plaintiffs filed this case, some direct harm that gave them standing, a controversy "must be extant at all stages of review." *Arizonans for Official English*, 520 U.S. at 67.

In *Utah Animal Rights Coalition v. Salt Lake City Corporation*, the plaintiff was allegedly suffering injury by virtue of a city's allegedly unconstitutional delay in acting on its demonstration permit, an injury that could be redressed by injunctive relief ordering the City to process the permit application. 371 F.3d 1248, 1264 (10th Cir. 2004). But by the

time the district court rendered its decision, the plaintiff was no longer suffering any ongoing injury as a result of the city's challenged practices and the challenged ordinance had been amended to correct the alleged constitutional flaw. *Id.* Under those circumstances, the Tenth Circuit held that the requisite personal interest that existed at commencement of the litigation no longer existed, that a declaration that the city should have processed the plaintiff's application more rapidly would have no legal significance, and that even an award of nominal damages would serve no practical purpose. *Id.* at 1264–65. In sum, a "declaratory judgment action involving past conduct that will not recur is not justiciable." *Id.* at 1266. Like the repeal of the challenged statute in *Utah Animal Rights Coalition*, the setting of an administrative hearing in this case forecloses further indefinite delay.

Plaintiffs' claim for injunctive relief similarly fails to present a live, justiciable controversy. The request to enjoin the Division and Director Conway "from violating constitutional due process through unreasonable and arbitrary delays" was clearly meant to require the Division to act. To that extent, what the claim sought has already been received, and it is therefore moot for the reasons explained above.

To the extent the claim could be read to apply to future conduct, it is also not justiciable because it requires assuming future unconstitutional acts. A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1065 (10th Cir. 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted)). Plaintiffs generally argue that the "administrative process does not impact this case, which is ripe." (Doc. 38, at 11.) And yet they seek prospective relief enjoining Defendants from violating their constitutional due process rights and

engaging in further delay. But now that an administrative hearing has been set, any further harm caused by delay remains speculative, and "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Without any allegations of impending illegal conduct, any injunction that might issue would be a generally inappropriate command to "obey the law." *See Glover Const. Co. v. Babbitt*, 172 F.3d 878 (Table), at *2 (10th Cir. 1999) (While "an injunction may be framed to bar future violations that are likely to occur, . . . [b]road non-specific language that merely enjoins a party to obey the law . . . does not give the restrained party fair notice of what conduct will risk contempt." (internal quotations omitted)).

Ultimately, Plaintiffs cannot show how either form of equitable relief would alter their situation vis-à-vis the Division and Director at this point. Since this relief would not redress any injury they claim to have suffered, these claims are not justiciable. *See Dias*, 567 F.3d at 1176. All claims seeking equitable relief against the Division and Director Crowley, therefore, must be dismissed without prejudice.[5]

**B. Claims Against Ms. Ham**

Against Ms. Ham, an investigator with the Division, plaintiffs seek damages under 42 U.S.C. § 1983, not equitable relief. They allege Ms. Ham deprived them of "their statutory right to a prompt decision on

---

[5] As noted above, Defendants point to a number of other impediments to the Court's reaching Plaintiffs' claims, including Eleventh Amendment immunity and abstention doctrines. Since the Court dismisses the claims for the reasons set forth here, it need not address these other arguments.

their license application by intentionally delaying the decision for more than [ten] months and unnecessarily prolonging and delaying the investigation of the existing licenses for more than [fifteen] months, thereby depriving Plaintiffs of earning a living." They further allege that she intentionally "classified insurance producers who issue bail bonds differently than similarly situated insurance producers, without a rational relationship to legitimate governmental objectives and in an unreasonable, arbitrary, or capricious manner." If plausibly stated and actionable against Ms. Ham, she could be liable for damages.

Ms. Ham argues[6] she is protected from suit under the doctrine of qualified immunity, which shields government officials performing discretionary functions from the burdens of civil trials and from liability for damages in "all but the most exceptional cases." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). A defendant's invocation of qualified immunity imbues a plaintiff with a heavy two-part burden. He must show both (1) the facts support a violation of a constitutional right, and (2) that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009) (permitting a court to analyze these factors in any order); *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015). A plaintiff may satisfy the clearly established portion of this burden "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of

---

[6] The Court is not fond of the practice, used by Ms. Ham here, of roughly incorporating large swaths of her co-Defendants' arguments into her briefs. (*See* Doc. 26, at 1 ("Ham adopts the following arguments contained in the motion to dismiss filed by the Division of Insurance and Michael Conway on July 23, 2019, Doc. #23: (1) mootness; (2) standing; (3) ripeness; and (4) abstention."). Especially when she does not specifically address how any of the incorporated arguments applies.

authority from other courts must have found the law to be as the plaintiff maintains.'" *Cox*, 800 F.3d at 1247 (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015); citing *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). A plaintiff "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Tonkovich*, 159 F.3d at 517. Qualified immunity applies unless the official's conduct violated such a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Plaintiffs fail to show that clearly established rights were violated. In their procedural and substantive due process claims, Plaintiffs simply state that Ms. Ham, as discussed above, intentionally delayed MIB's application and a decision on Mr. Mares's and M&A's licenses. In their equal protection claim, Plaintiffs say only that Ms. Ham intentionally treated bail bonds companies differently than other similarly situated insurance producers. For all these claims, they allege that "the law was clear that a citizen has a constitutional right to due process and equal protection under the law." (Doc. 39, at 6.) That blunt, limited conclusion is true, but inadequate. *See Cox*, 800 F.3d at 1245–46 ("[Plaintiff] made no more than an anemic attempt to carry this burden as to the clearly-established-law question, merely asserting in bare-bones fashion that [the] constitutional 'right to adequate medical care and to be free from deliberate indifference ha[d] been clearly established for decades.'"). Of course, "the right to due process of law is quite clearly established by the Due Process Clause," *Anderson*, 483 U.S. at 639, but "not every due process violation involves a clearly established right." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 396 (10th Cir. 2016). Plaintiffs' own briefing cites law requiring this inquiry to de demonstrated with particularity, but they have failed to supply any Supreme Court or

Tenth Circuit precedent analogizing the conduct here to any known breach of a clearly established right.

Nor can the Court affirm that any clearly established right was violated. Plaintiffs' equal protection claim requires a showing that they have been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Missing here is any demonstration, or even allegation, that Plaintiffs, or bail bonds companies in general, received unequal treatment to other insurance producers.

Regarding procedural due process, MIB, as a license applicant, does not clearly have the present property interest in a license necessary to raise this type of procedural due process claim. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Chiddix Excavating, Inc. v. Colorado Springs Utilities*, 737 F. App'x 856, 859 (10th Cir. 2018); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) ("New applicants for these types of licenses do not have a property interest so as to entitle them to procedural or substantive due process rights in the same way that an existing permit holder might demand." (internal citation omitted)). And they point to no clearly established law showing that licensees have a right to a regulatory investigation that takes less than a year, or to demand a hearing during that investigation. Indeed, there does not appear to be such a right. *See Hannah v. Larche*, 363 U.S. 420, 445–46 (1960); *Setliff v. Mem'l Hosp. of Sheridan Cty.*, 850 F.2d 1384, 1395 (10th Cir. 1988). After the investigation, when a decision is made, they do have a right to be heard, but a hearing has now been set at which Plaintiffs will be able to challenge the Defendants' decisions.

Finally, claims for substantive due process must allege abrogation of "fundamental liberty interests." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2479 (2015). Governmental conduct may prove sufficiently abusive or arbitrary so as to violate substantive due process in one of two ways—from "(1) legislative acts that infringe upon a personal right without sufficient justification, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Colbruno v. Kessler*, 928 F.3d 1155, 1167 (10th Cir. 2019). "Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* (quoting Halley v. Huckaby, 902 F.3d 1136, 1155 (10th Cir. 2018). Facts "support[ing] an inference of indifference or callousness, but no more" are not enough to meet this standard. *Id.*

Here, Plaintiffs offer no clearly-established discussion related to either of the above factors, but the allegations make plain that Ms. Ham was neither indifferent or callous in her investigation. She is alleged to have inquired of Plaintiffs and their insurer during concurrent investigations and, most egregiously to Plaintiffs, delayed the result of those investigations for many months. But that delay, while surely frustrating, does not shock the conscience, especially considering the depth of the investigation—which included many requests for information and resulted in a notice against Mr. Mares, M&A, MIB, and another of Mr. Mares's entities containing ninety-five charges. Plaintiffs have not persuasively argued that any of Ms. Ham's conduct, though potentially "incorrect or ill-advised," is conscience-shocking, *see Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013), or that they have a right to a swifter conclusion to a thorough investigation. It may be unfair and unfortunate to consider slow-moving and inscrutable bureaucracies the

norm, but it takes significantly more to be conscience-shocking. With no cases suggesting a process such as this qualifies, Plaintiffs' claims must be dismissed.

### C. Claims Against Mr. McCarther

The claims against Mr. McCarther are before the Court pursuant to its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3); *see also, e.g.*, *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (concluding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over a plaintiff's remaining state-law negligence claims and stating that "we have repeatedly recognized that this is the preferred practice"). And when a district court dismisses a primary cause of action for lack of subject matter jurisdiction, it loses all original jurisdiction on which to append supplemental state law claims, even if they arose from the same common nucleus of fact. *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 (10th Cir. 2004). To proceed further on the counts against Mr. McCarther would invite reversible error, *see id.*, and be inconsistent with the preferred practice of this Court. The Court, therefore, dismisses these claims without prejudice.

## CONCLUSION

For the foregoing reasons, the motions to dismiss (Docs. 23, 26)[7] are **GRANTED**. The Amended Complaint (Doc. 20) is **DISMISSED WITHOUT PREJUDICE** to Plaintiffs' right to refile in a court of appropriate jurisdiction. The pending motion to stay discovery (Doc. 34) is **DENIED AS MOOT**.

Dated: October 21, 2019.                BY THE COURT:

                                                            _____
                                                            Daniel D. Domenico
                                                            United States District Judge

---

[7] Doc. 24 was amended and re-filed as Doc. 26 to correct an error with the certificate of service. Doc. 24 is **DENIED AS MOOT**.